**In the**
**UNITED STATES DISTRICT COURT**
**for the SOUTHERN DISTRICT OF INDIANA,**
**INDIANAPOLIS DIVISION**

| | | |
|---|---|---|
| JOHN D. WARD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| *vs.* | ) | **CAUSE NO. 1:04-CV-00676-SEB-VSS** |
| | ) | |
| INDEPENDENT ORDER OF FORESTERS, | ) | |
| JOHN ROLLANDELLI, and ROY | ) | |
| BARNETT, | ) | |
| | ) | |
| Defendants. | ) | |

**ENTRY ON**
**PLAINTIFF'S SECOND MOTION TO EXCLUDE (doc. no. 82) AND**
**DEFENDANTS' MOTION TO DISMISS (doc. no. 65).**

The defendants move under Fed. R. Civ. P. 12(b)(6) to dismiss nine of the 16 counts of the complaint for failure to state claims.[1]  Because the plaintiff did not file an opposition brief, the motion is subject to summary ruling.  S. D. Ind. L. R. 7.1(a).  The plaintiff responded instead with a motion to exclude the evidentiary exhibits attached to the defendants' motion.  For the reasons set forth in this Entry, the plaintiff's motion is denied and the defendants' motion is granted in part and denied in part.

The plaintiff, John Ward, began employment with defendant, Independent Order of Foresters ("IOF"), on April 2, 2001 as its Regional Director of Sales with responsibility for the state of Indiana.  This was preceded by a period of negotiation between Mr. Ward and defendant

---

[1] The plaintiff has progressively whittled down his original 40-page, 208-paragraph, 16-claim complaint (with 100 pages of 13 attachments) to the current 23-page, 120-paragraph, 16-count fourth amended complaint (doc. no. 61).

1

John Rollandelli, IOF's Regional Vice President responsible for the territory including Indiana, during which Mr. Ward alleges that Mr. Rollandelli made promises and representations that induced his employment.  The negotiations culminated in Mr. Ward's execution of an Employment Agreement on March 2, 2001.  Approximately one year later, on March 27, 2002, Mr. Ward was placed on probation and, on April 15, 2002, he was terminated by Mr. Rollandelli and defendant Roy Barnett, an IOF human-resources employee.  Mr. Ward alleges that the defendants breached the agreements they had entered into with him and caused injuries to him. The Court will address only the counts and claims sought to be dismissed in Defendants' motion to dismiss.

**Motion to exclude**

The defendants attached five exhibits to their motion to dismiss:  (1) the March 2, 2001 Employment Agreement signed by Mr. Ward; (2) Schedule A of the Employment Agreement entitled "Role Description," a job description for the Regional Director of Sales position; (3) Schedule D of the Employment Agreement entitled "Confidentiality and Non-solicitation Agreement"; (4) IOF's 2001/2002 Code of Ethics; and (5) a memorandum dated March 26, 2002 from Mr. Rollandelli to Mr. Ward, copy to Mr. Barnett, entitled "Learning and Development Action Plan," setting forth the terms of Mr. Ward's probation.  Mr. Ward seeks to have the exhibits and any citations thereto excluded from the defendants' brief "pursuant to the Court's July 6, 2004, Order."  That Order was entered in the margin of Mr. Ward's motion for leave to file his third complaint (second amended), (doc. no. 25), and reads in its entirety:  "The complaint may be filed but the evidentiary matter in the form of exhibits shall not be made a part of the court file and shall be returned to counsel", (doc. no. 26).  According to Mr. Ward's

interpretation, this Order prohibits all evidentiary attachments to all filings and all citation to or use of exhibits by any party "until the Court notifies the parties by virtue of a subsequent order." (Brief in Support of Plaintiff's Second Motion to Exclude (doc. no. 82) ("Plaintiff's Brief"), pp. 2 and 4).  Rejecting defendants' assumption that the Court was only intending to control the file's bulk by returning the attachments, Mr. Ward contends that his broader interpretation is validated by the Court's use of the word "file" in conjunction with the term "evidentiary matter." (*Id.*, pp. 2-3 n. 1).  He finds further support for his interpretation in S. D. Ind. L. R. 79.1(a), pertaining to the Clerk's custody of offered and admitted exhibits, contending that the Court's description of the attachments to his proposed complaint as "evidentiary matter" means, pursuant to Rule 79.1(a),  that all previous complaints with attached exhibits were vacated and all parties are prohibited from making use of evidentiary exhibits in this case.  (*Id.*, at p. 3-4).  Mr. Ward asserts that his omission of any exhibits to his fourth and fifth complaints showed "deliberate restraint," demonstrating adherence to his interpretation of the July 6, 2004 Order.  He argues that he will be unfairly prejudiced in his ability to respond to the defendants' motion if the Court applies its Order only to him and permits the defendants to make use of exhibits only of their own choosing.  He asks the Court to amend its July 6, 2004 Order if it now intends to permit use of evidentiary exhibits in this case.

Mr. Ward's interpretation of the July 6, 2004 Order is unreasonable and appears to have been advanced as a last ditch effort to forestall a ruling against him.  The only rational interpretation of the Order is the most simple and direct:  it applied only to the attachments to Mr. Ward's proposed third complaint.  The Order contains no case-wide language directed to any party other than Mr. Ward or to any filing other than the motion for leave, and there is

simply no reasonable interpretation of S. D. Ind. L. R. 79.1(a) that converts this plain and simple marginal Order into a general rule-of-the-case that countermands the provisions of S. D. Ind. L. R. 7.1 and 56.1, and common practice allowing the inclusion of evidentiary appendices in motion briefs.  It was unreasonably risky for Mr. Ward to rely on such obtuse reasoning in support of a hidden, broader meaning to the Order rather than to confine himself to the straightforward, plain and simple meaning of the words used.  Mr. Ward could and should have sought clarification if he was genuinely uncertain about the scope of the Order.

A complaint must be a "short and plain statement of the claim showing that the pleader is entitled to relief " and it must be "simple, concise, and direct."  Fed. R. Civ. P. 8(a) and (e)(1).  The purpose of pleading is to notify the defendant of the nature of the claims, not to prove the case, detail a party's supporting allegations, or to signal to defendants or the court the extent of one's evidentiary support.  *Sparkman v. McFarlin*, 601 F.2d 261, 276 (7th Cir. 1979).  Detailed, voluminous pleadings are not required, not favored, and frequently hazardous to the pleader:

> Rule 8 determines how much information has to be in the complaint — not much, as both the language of Rule 8 and the forms attached to the Rules show.  The complaint should contain a "short and plain statement of the claim showing that the pleader is entitled to relief", Rule 8(a)(2).  It is not only unnecessary but also undesirable to plead facts beyond limning the nature of the claim (with exceptions, see Rule 9, that do not concern us).  Bloated, argumentative pleadings are a bane of modern practice. *American Nurses' Ass'n v. Illinois*, 783 F.2d 716 (7th Cir.1986).  Rule 11 requires not that counsel plead facts but that counsel know facts after conducting a reasonable investigation — and then only enough to make it reasonable to press litigation to the point of seeking discovery. Rule 11 neither modifies the "notice pleading" approach of the federal rules nor requires counsel to prove the case in advance of discovery.  See also *Szabo*, 823 F.2d 1083 (Rule 11 requires only an "outline of a case" before filing the complaint, though it does require enough investigation to discover that outline).

*Frantz v. U.S. Powerlifting Federation*, 836 F.2d 1063, 1067-68 (7th Cir. 1987).  *Gutierrez v. Peters*, 111 F.3d 1364, 1374 (7th Cir. 1997) ("As this Court has noted in the past, 'a plaintiff can

plead himself out of court by alleging facts which show that he has no claim, even though he was not required to allege those facts. . . . Allegations in a complaint are binding admissions . . . and admissions can of course admit the admitter to the exit from the federal courthouse.'"). In addition, although a motion to dismiss is evaluated on the basis of the pleadings alone, Fed. R. Civ. P. 12(c), those pleadings include all attachments thereto, Fed. R. Civ. P. 10(c) ("A copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes."); *Snyder v. Nolen*, 380 F.3d 279, 297 n. 1 (7th Cir. 2004), and a court need not convert a motion to dismiss into a motion for summary judgment in order to permit a party to rebut statements in attachments to its pleading, *Thompson v. Illinois Dept. of Professional Regulation*, 300 F.3d 750, 753-55 (7th Cir. 2002). It is also well-settled that, while a court takes the well-pleaded allegations of the complaint as true and draws all reasonable inferences in plaintiff's favor on a motion to dismiss, operative documents attached to, or referred to in, the pleadings and intended to form the basis of the plaintiff's claims will control over a complaint's allegations. *Centers v. Centennial Mortgage, Inc.*, 398 F.3d 930, 933 (7th Cir. 2005); *Northern Indiana Gun & Outdoor Shows, Inc. v. City of South Bend*, 163 F.3d 449, 455 (7th Cir. 1998).

Despite these well-established pleading requirements, Mr. Ward chose, nonetheless, to file lengthy and detailed first and second complaints to which he attached voluminous documents. The Court granted the defendants' motion to strike his first complaint, including 100 pages of attachments, for failure to provide a short, plain, simple, concise, and direct statement of his claims, sufficient to give notice of the nature of his claims. (Doc. no. 21). Mr. Ward responded with a second complaint, consisting of 21 pages of text and 61 pages of attachments, all of which were repeated from his first complaint. Less than two weeks later, he

moved for leave to file a third complaint in which he duplicated the attachments to his second complaint, added five pages thereto, and added three exhibits.  Courts possess the power to control needless bulk in their files by striking or preventing the filing of duplicative, unnecessary, or otherwise inappropriate clutter.  *See Kelley v. Boettcher*, 85 F. 55 (8th Cir. 1898); *Barnes v. Black*, No. 04-1317, 2006 WL 208851 (C. D. Ill., Jan. 24, 2006); *Koken ex rel. Reliance Ins. Co. v. Auburn Mfg., Inc.*, 341 F.Supp.2d 20, 23 (D. Maine 2004); *Chan v. Orthologic Corp.*, No. Civ 96-1514 PHX RCV, 1998 WL 1018624, *7 n. 5 (D. Ariz., Feb. 5, 1998).  Because Mr. Ward's voluminous attachments were not necessary for notice pleading and had been submitted twice previously, a third submission would have served only to needlessly expand an already oversized  file.  If he had wished, Mr. Ward could have moved for leave to incorporate by reference the attachments from one of his previous complaints.  S. D. Ind. L. R. 15.1.  The July 6, 2004 Order was an effort to manage of the file in accordance with the established standards of pleading practice.

There is, in fact, no other ground for excluding the defendants' attachments.  Generally, if a motion to dismiss presents matters extraneous to the pleadings, the court must convert the motion to one for summary judgment and afford the opposing party an opportunity to present additional pertinent material.  Fed. R. Civ. P. 12(c).  A narrow exception to the conversion requirement exists if the opposing party's pleadings refer to the extraneous matter and the matter is central to the opposing party's claim or defense:

> Federal Rule of Civil Procedure 10(c) provides that "[a] copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes." Fed.R.Civ.P. 10(c). It is also well-settled in this circuit that "documents attached to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to his claim. Such documents may be considered by a district court in ruling on the motion to dismiss." *Wright v. Assoc. Ins. Cos. Inc.*,

29 F.3d 1244, 1248 (7th Cir.1994). "[T]his is a narrow exception" to the general rule that when additional evidence is attached a motion to dismiss, "the court must either convert the 12(b)(6) motion into a motion for summary judgment under Rule 56 . . . or exclude the documents attached to the motion to dismiss and continue under Rule 12." *Levenstein v. Salafsky*, 164 F.3d 345, 347 (7th Cir.1998).

*188 LLC v. Trinity Industries, Inc.*, 300 F.3d 730, 735 (7th Cir. 2002).[2] *Rosenblum v. Travelbyus.com, Ltd.*, 299 F.3d 657, 661 (7th Cir. 2002); *MCI Worldcom Network Services, Inc. v. Atlas Excavating, Inc.*, No. 02-C-4394, *Memorandum Opinion and Order*, 2005 WL 130076, *9 (N.D. Ill., Feb. 23, 2005). Dismissal on the basis of statements in a document attached to a complaint or unattached but referred to therein is appropriate only if the plaintiff relies on the statements to form the basis a claim or part of a claim. *Carroll v. Yates*, 362 F.3d 984, 986 (7th Cir. 2004) (attachments to complaint); *Northern Indiana Gun & Outdoor Shows, Inc. v. City of South Bend*, 163 F.3d 449, 455 (7th Cir. 1998) (same); *188 LLC*, *supra* (material not attached to complaint).

There is no dispute in this case — indeed, it is clearly evident — that Mr. Ward refers to each of the five defendants' exhibits in his current fifth complaint, relying on the documents to form the basis of his claims.[3] Therefore, the defendants were fully entitled to refer to and cite the exhibits and to attach them to their motion to dismiss, just as Mr. Ward was entitled to use them in response. Mr. Ward's motion to exclude must be, and therefore is, denied.

---

[2] *188 LLC* and *Rosenblum* expanded the exception by applying it in cases where the opposing plaintiffs neither attached nor referred to the subject documents but the documents were considered as integral parts of the operative contracts which were attached to the complaints and were referred to therein.

[3] The defendants accurately list Mr. Ward's citations and references to the exhibits in his Fourth Amended Complaint in their reply in support of their motion to dismiss. (Defendants' Reply Brief in Support of Their Motion to Dismiss [*etc.*] (doc. no. 85), chart p. 6).

**Motion to dismiss**

Mr. Ward has chosen not to file a response to the defendants' motion, relying instead on his motion to exclude.  As is now evident, this was another unreasonable litigation risk for him to have taken because the denial of his motion to exclude has left him with no opportunity to respond to defendants' substantive arguments.  In his motion to exclude, he argued that he "would be prejudiced and his ability to respond to Defendant's [*sic*] motion would be compromised" if the Court did not exclude the defendants' exhibits or issue another order vacating the July 6, 2004 Order and permitting the parties to submit evidentiary exhibits. (Plaintiff's Brief, p. 5).  Thus, compounding the unreasonableness of his interpretation of the July 6, 2004 Order, Mr. Ward failed to make any showing or argument that he was, in fact, unable to respond to the defendants' legal arguments for dismissal without submitting or citing to specific items of evidence.  Briefing is not an exercise in trial and error where new arguments and briefs may be trotted out if previous ones fail.  It was Mr. Ward's opportunity and responsibility to present all of the grounds that he had in opposition to the defendants' motion to dismiss.  He did not and his reasons for doing so are so inexcusable that they do not merit discretionary grace by the Court.  The defendants' motion to dismiss is therefore subject to summary ruling.  S. D. Ind. L. R. 7.1(a).

**Count 1.**  In this count, Mr. Ward asserts promissory-estoppel claims against IOF and Mr. Rollandelli.  Mr. Ward asserts that Mr. Rollandelli induced him into accepting employment with IOF by three false statements.  First, during negotiations for his employment, Mr. Ward told Mr. Rollandelli that his acceptance of the position was contingent on being reimbursed for the reasonable expenses of relocating and Mr. Rollandelli verbally assured Mr. Ward that

reimbursement would be made.  Mr. Ward subsequently signed an Employment Agreement on March 2, 2001 that included terms regarding reimbursement of relocation expenses and Mr. Ward repeatedly requested reimbursement during his employment.  However, Mr. Rollandelli ultimately refused to provide such reimbursement after Mr. Ward had relocated.

Second, Mr. Rollandelli promised Mr. Ward before he was hired that he would have "total control" of the running of his office, including the hiring of a sales force, and Mr. Ward told Mr. Rollandelli that without such control he would decline the position.  Fourth Amended Complaint (doc. no. 61) ("Complaint"), ¶¶ 15 and 16.  Schedule A attached to his Employment Agreement states that Mr. Ward's position, the Regional Director of Sales ("RDS"), was responsible for sales-force growth and would have full responsibility for sales growth and member acquisition.  Complaint, ¶ 17.  However, in July 2001, Mr. Rollandelli directed that final hiring decisions for regional offices would be made by him and ordered Mr. Ward not to hire "neophytes" and to hire only licensed agents.

Third, in June 2001, after Mr. Ward commenced work, Mr. Rollandelli orally promised that he could attend a convention in Hawaii if he met certain production goals.  Mr. Ward met those goals but was refused attendance at the convention.

Mr. Ward alleges that all three of these false promises were "willful and malicious" and "induced Mr. Ward to accept the RDS position with IOF in lieu of other existing and potential job opportunities."  Complaint,  ¶¶ 21 and 22.

In Indiana, an action for promissory estoppel requires five elements to be established: "'(1) a promise by the promissor; (2) made with the expectation that the promissee will rely

thereon; (3) which induces reasonable reliance by the promissee; (4) of a definite and substantial nature; and (5) injustice can be avoided only by enforcement of the promise.'"  *Hardin v. Hardin*, 795 N.E.2d 482, 487 (Ind. Ct. App. 2003) (quoting *Brown v. Branch*, 758 N.E.2d 48, 52 (Ind. 2001)).

According to the allegations of the complaint, Mr. Ward executed the Employment Agreement in reliance on Mr. Rollandelli's promise to reimburse his relocation expenses. Complaint, ¶ 13.  However, the Employment Agreement includes not only terms governing relocation reimbursement, *id.*; Employment Agreement §§ 2.5 and 2.6, but an integration clause providing that "[t]his Agreement constitutes the entire Agreement between the parties with respect to the employment of the RDS" and "any and all previous agreements written or oral, express or implied . . . relating to the employment of the RDS by the IOF are terminated and canceled . . . .",  Employment Agreement § 14.1.  In Indiana, "where the parties to an agreement have reduced the agreement to a written document and have included an integration clause that the written document embodies the complete agreement between the parties, the parol evidence rule prohibits courts from considering parol or extrinsic evidence for the purpose of varying or adding to the terms of the written contract." *Truck City of Gary, Inc. v. Schneider Nat. Leasing*, 814 N.E.2d 273, 278 (Ind. Ct. App. 2004).  Therefore, as a matter of law, there are no effective oral promises by Mr. Rollandelli that differ from the terms of the Employment Agreement and the promises Mr. Rollandelli made terminated pursuant to the Employment Agreement.  Any reliance by Mr. Ward on Mr. Rollandelli's promises was legally unreasonable. Therefore, because the first and third elements of a promissory-estoppel claim are absent, Mr. Ward has failed to state a claim based on these allegations.

Additionally, the integration clause includes mutual releases providing that "any and all previous agreements written or oral, express or implied, between the parties or on their behalf, relating to the employment of the RDS by the IOF are terminated and canceled and each of the parties releases and forever discharges the other of and from all manner of actions, causes of action, claims and demands whatsoever, under or in respect of any such agreements." Employment Agreement, § 14.1.  Indiana enforces release terms as contracts, *Landers v. McComb Window and Door, Inc.*, 248 N.E.2d 358, 363 (Ind. App. 1969); *Dick Corp. v. Geiger*, 783 N.E.2d 368, 374 (Ind. Ct. App. 2003), *trans. denied*, including release provisions in employment contracts, *Albert Johann & Sons Co., Inc. v. Echols*, 238 N.E.2d 685, 689 (Ind. App. 1968).  And, as with any written contractual provision, unless there is an extrinsic ambiguity, release provisions are interpreted as a matter of law based on the terms of the contract itself.  *Geiger*, 783 N.E.2d at 374.  Because there is no apparent ambiguity in § 14.1's language and it is comprehensive in scope, the Court concludes that Mr. Ward released any and all claims against IOF arising from Mr. Rollandelli's verbal statements or promises before execution of the Employment Agreement.

With regard to Mr. Rollandelli's verbal assurances about Mr. Ward's control of hiring and other job responsibilities, the Complaint's allegations do not specify whether the representations were made before or after the execution of the Employment Agreement.  The Complaint states only that they were made "prior to Mr. Ward's hire date", Complaint, ¶ 15, and that Mr. Ward told Mr. Rollandelli that, without the assurances, Mr. Ward would decline the RDS position, *id.*, ¶¶ 15 and 16.  To the extent that Mr. Rollandelli's promises were made before execution of the Employment Agreement, they fail to state a promissory-estoppel claim for the

11

same reasons as set forth above, because of the Employment Agreement's integration and

release clauses.  If the statements were made during the month between execution of the

Employment Agreement and Mr. Ward commencing work, he cannot prove that he relied upon

those statements to accept employment with IOF by executing the Employment Agreement.  In

addition, he alleges only that the false promises induced him to "accept the RDS position with

IOF in lieu of other existing and potential job opportunities", Complaint, ¶ 21, not that the

promises induced him to report to work after he had already accepted the position by executing

the Employment Agreement.[4]  Mr. Ward thus cannot prove that he reasonably relied on Mr.

Rollandelli's verbal representations regarding the RDS position responsibilities when accepting

the RDS position.

Finally, because Mr. Rollandelli's alleged promises regarding the Hawaii convention

were made after Mr. Ward executed the Employment Agreement and two months after he

commenced work at IOF, Complaint, ¶ 20 (promises made "[o]n or about June, 2001"), he

cannot prove that he reasonably relied on the promises to "accept the RDS position with IOF in

lieu of other existing and potential job opportunities" as is alleged in Count 1.

Because Mr. Ward cannot prove that he reasonably relied on Mr. Rollandelli's alleged

---

[4] Mr. Ward's allegations do not allow the interpretation that Mr. Rollandelli's post-execution pre-start promises, if any, induced him to enter into a verbal modification of the Employment Agreement.  He does not allege such a modification to the Employment Agreement and no consideration for it is alleged on his part.  Although the Employment Agreement provides that "[a]ny modification to this Agreement must be in writing and signed by the parties or it shall have no effect and shall be void," Employment Agreement, § 15.1, such restrictive terms are ineffective in Indiana to prevent verbal modifications if all the elements of a contract are present for the modification.  *City of Indianapolis v. Twin Lakes Enterprises, Inc.*, 568 N.E.2d 1073, 1084-85 (Ind. Ct. App. 1991).

false promises to accept the RDS position with IOF, and he released all claims against IOF upon execution of the Employment Agreement, Count 1 of his Complaint fails to state a claim for promissory estoppel and is dismissed.

**Count 2.**  This count asserts that IOF breached its express covenant of good faith and fair dealing which derives from the IOF Code of Ethics (Exhibit 4 attached to the defendants' motion) ("Code").  Substantively, Mr. Ward alleges that this Code "aspires to ensure that business be conducted according to 'high standards of honesty and fairness' and 'that the qualities of fairness, integrity, honesty and fulfilling promises should be seen as assets and will be treated as such.'"  Complaint, ¶ 26.  In addition, the Code provides that "[e]veryone at Foresters . . . shall comply with both the letter and spirit of all laws and regulations that govern our business", *id.*, ¶ 25; Code, p. 6, and that "[p]ersons who in good faith report misconduct or other breaches under the Code will be protected from all forms of reprisal or retaliatory actions", *id.*, ¶24; Code, p. 5.  Mr. Ward alleges that his Employment Agreement and Ethics Declaration[5] expressly incorporate the Code by reference, Complaint, ¶ 23, and that the Ethics Declaration required him to adhere to the Code, *id.*, ¶ 27.

Mr. Ward claims that "IOF breached its good faith and fair dealing requirement by engaging in conduct in violation of the Code of Ethics otherwise described herein <u>and</u> by terminating Mr. Ward without just cause by actions and conduct elsewhere described herein."

---

[5] The Ethics Declaration was not further described in the Complaint and was not submitted either by Mr. Ward with one of his complaints or by the defendants on the present motion.  The Employment Agreement refers to the Ethics Declaration as an attached Schedule C that Mr. Ward was to separately execute.  Employment Agreement, § 5.1.  The Court assumes for the purposes of the present motion that the Complaint and the Employment Agreement accurately describe the Declaration.

13

Complaint, ¶ 28 (emphasis added).  The facts and circumstances supporting this claim are not otherwise described in this Count.  The only other reference to the Code in the Complaint is in Count 5 wherein Mr. Ward alleges that, in October 2001, he witnessed an employee copying another insurer's training materials that were protected by federal copyright and state trade-secret laws; that he immediately objected to the "plagiarized use" of the materials to the employee and Mr. Rollandelli; that, in December 2001, Mr. Rollandelli announced that the plagiarized materials would be utilized by all offices in his region; that the plagiarized training materials were introduced to IOF employees at a managers' meeting in January 2002; that Mr. Rollandelli severely reprimanded Mr. Ward for not complying with efforts to utilize the training materials which Mr. Rollandelli acknowledged were stolen; and that Mr. Rollandelli and Mr. Barnett placed Mr. Ward on probation in March 2002 and terminated him in April 2002.

Because Mr. Ward identifies no legal theory or grounds for asserting an independent claim against IOF for violating another insurer's copyright or trade-secret rights, and the same is not self-evident or apparent on the allegations of the Complaint, this Count must be dismissed to the extent that it incorporates such a claim.  Mr. Ward additionally claims that IOF's termination of him "without just cause" violated its express covenant of good faith and fair dealing, but the only basis suggested for the claim in this Count is the Code's statement that employees who, in good faith, report violations of the Code "will be protected from all forms of reprisal or retaliatory actions."  Because no grounds for a general "for cause" requirement are suggested, the Court construes Mr. Ward's claim to be that IOF terminated him for reporting a perceived violation of the Code and thereby breached an express covenant to protect him from  reprisal or retaliatory actions.

14

The Employment Agreement contained the following provision:

> The RDS [Regional Director of Sales] agrees to perform all duties diligently, professionally, ethically and competently in compliance with the IOF Code of Ethics . . . .  The RDS agrees and acknowledges having read the attached **Schedule C** — The IOF Ethics Declaration — and that by signing the Ethics Declaration, understands such declaration and agrees to be bound by its terms.

Employment Agreement, § 5.1.  The Ethics Declaration "expressly required Mr. Ward to adhere to the IOF Code of Ethics."  Complaint, ¶ 27.  The Code states that it applies to all IOF employees, including management, and contains several provisions defining ethical standards for IOF and requiring adherence to outside professional standards, laws, and regulations.[6]  The Code

---

[6] The Code of Ethics contains the following statements:

> This Code of Ethics states our commitment to the highest standards of behavior in every activity undertaken by Foresters and it forms an integral part of the employment or contractual arrangement between Foresters and every regular employee, contract employee, independent contractor and members of the Board of Directors, associated with Foresters.

Code, p. 3.

> This Code applies to all regular employees, contract employees, independent contractors and members of the Board of Directors of Foresters, its subsidiaries and affiliates worldwide.  You should review this Code of Ethics regularly and use it as your standard for making decisions and judgements in carrying out your role within Foresters.

*Id.*, p. 4

> Everyone at Foresters . . . shall comply with both the letter and spirit of all laws and regulations that govern our business.

*Id.*, p. 6

> Any individual covered under this Code who participates in the analysis of securities, real estate, mortgages or private placement for any of Foresters' portfolios, or who has access to such information must ensure compliance with applicable securities laws and adherence to ethical standards.  This also applies to other areas (e.g. accounting, actuarial, legal or life insurance sales) where

also contains the aforementioned statement that whistleblowers will be protected from reprisals and retaliation.  The Employment Agreement also provided that "[t]he parties understand and agree that the RDS is employed in an 'at-will' status and that this Agreement and the employment relationship may be terminated by the IOF at any time, with or without notice, in its sole and absolute discretion for any reason, with or without cause."  Employment Agreement, § 8.1.

The Court construes Mr. Ward's claim to be that the Code's statement that whistleblowers will be protected against reprisal and retaliation constitutes an express covenant by IOF that converted his at-will status into one that prohibited retaliatory discharge for whistleblowing and that IOF breached this covenant by terminating him in retaliation for reporting violations of federal copyright and state trade-secret law and for refusing to cooperate with the violations.

In Indiana, the presumption is strong that when employment is not for a defined or

---

> established guidelines or standards have been set which govern professional
> conduct.

*Id.*, p. 17.

> If you feel that you are being instructed to act in a manner that may be contrary to
> this Code of Ethics but fail to report your concerns to Foresters within a
> reasonable period of time, you will be considered as condoning the activity and
> acting in breach of the Code by your own choice.

*Id.*, p. 5.

> Persons who in good faith report misconduct or other breaches under the Code
> will be protected from all forms of reprisal or retaliatory actions.

*Id.*.

16

ascertainable term, it is "at-will" and may be terminated by either party at any time for any or no reason, without incurring liability. *Orr v. Westminster Village North, Inc.*, 689 N.E.2d 712, 717 (Ind. 1997). An employer owes no implied duty of good faith and fair dealing to an at-will employee with regard to the termination of employment. *Hamblen v. Danners, Inc.*, 478 N.E.2d 926, 928 (Ind. Ct. App. 1985); *Mehling v. Dubois County Farm Bureau Coop. Assoc.*, 601 N.E.2d 5, 8 (Ind. Ct. App. 1992). The employment-at-will doctrine applies only to liability for termination of employment and it is merely a rule of construction, not a substantive limit on the freedom to contract. *Orr*, 689 N.E.2d at 717; *Swan v. TRW, Inc.*, 634 N.E.2d 794, 797 (Ind. Ct. App. 1994), *trans. denied*. Thus, employers and employees may arrange the non-termination conditions of employment in any manner they choose, which could cause duties of good faith and fair dealing to arise, *see Weiser v. Godby Bros., Inc.*, 659 N.E.2d 237, 239-40 (Ind. Ct. App. 1996), *trans. denied*; *Prudential Ins. Co. of America v. Crouch*, 606 F.Supp. 464 (S. D. Ind. 1985), *affirmed*, 796 F.2d 477 (table) (7th Cir. 1986), and they may "include a clear job security provision in an employment contract", in which case, the presumption of at-will employment may be rebutted. *Orr*, 689 N.E.2d at 717; *Eck & Assoc., Inc. v. Alusuisse Flexible Packaging, Inc.*, 700 N.E.2d 1163, 1169 (Ind. Ct. App. 1998), *trans. denied.*.

Indiana recognizes three exceptions to the presumption that employment without a defined or ascertainable duration, or without a specific job-security agreement, is terminable at-will: first, when the employee supplies adequate independent consideration in return for permanent employment; second, when termination contravenes a clear statutory right or duty; and third, when the employee establishes promissory estoppel. *Orr*, 689 N.E.2d at 718. In Count 2, Mr. Ward does not allege that he gave independent consideration in return for job

17

security against whistleblowing retaliation or that his termination violated public policy.  Neither

does Count 2 assert that IOF was estopped from terminating him.[7]  Instead, Count 2 asserts only

that Mr. Ward and IOF had an express agreement on job security:  that Mr. Ward would not be

terminated for reporting violations of IOF's Code of Ethics.[8]

---

[7] In the employment context, Indiana has adopted the *Restatement*'s definition of promissory estoppel:

> A promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by the enforcement of the promise.  The remedy for breach may be limited as justice requires.

*Restatement* (*Second*) *of Contracts*, § 90(1) (1980); *Jarboe v. Landmark Community Newspapers of Indiana, Inc.*, 644 N.E.2d 118, 121 (Ind. 1994); *D & G Stout, Inc. v. Bacardi Imports, Inc.*, 923 F.2d 566, 568 (7th Cir. 1991).  The promisee's reasonable detrimental reliance on a promise that the promisor should have known would cause that detriment supplies the absent bargained-for consideration that is ordinarily required to make such a promise binding.  *First National Bank of Logansport v. Logan Mfg. Co., Inc.*, 577 N.E.2d 949, 954 (Ind. 1991); *Lyon Metal Products, Inc. v. Hagerman Const. Corp.*, 391 N.E.2d 1152, 1155 (Ind. Ct. App. 1979).

Count 2 does not allege reasonable detrimental reliance that supplies a missing consideration.  Instead, Count 2 alleges that Mr. Ward's Employment Agreement contains an express bargained-for job-security term that was incorporated by reference from IOF's Code of Ethics.  In addition, the promissory-estoppel exception to at-will status allows a remedy for only reimbursement of actual losses, not expectancy damages (*e.g.*, lost future wages or reinstatement), *Jarboe*, 644 N.E.2d at 122; it does not convert at-will status to for-cause status and is not a basis for general wrongful-discharge damages, *id.*  Count 2 does not allege any out-of-pocket or opportunity-cost damages that may be recovered by a promissory-estoppel action.  *See id.*; *D & G Stout*, 923 F.2d at 568-69.  In addition, it is unlikely that detrimental reliance on the whistleblower provision of the Code would be found to have been reasonable in light of the Employment Agreement's specific designation of Mr. Ward's position as employment-at-will.

[8] Count 2 cannot be fairly read to assert that the Code of Ethics' promise of whistleblower protection constituted an offer of a unilateral contract by IOF which Mr. Ward accepted by his performance of reporting Code violations.  Even if it can be so read, the Indiana Supreme Court has expressly refused to recognize "a broad new exception to the at-will doctrine for employee handbooks."  *Orr*, 689 N.E.2d at 719.

The Employment Agreement and its attached Ethics Declaration impose obligations only on Mr. Ward: "to perform all duties . . . in compliance with the IOF Code of Ethics", Employment Agreement, § 5.1, and "to adhere to the IOF Code of Ethics", Complaint, ¶ 27. There is no other general or specific incorporation of all obligations, promises, or representations in the Code of Ethics into the Employment Agreement such as would bind IOF. This fact, coupled with the clear provision in the Employment Agreement that Mr. Ward's employment was at-will, dooms Count 2. Because Count 2 fails to state a claim for breach of an express covenant of good faith and fair dealing, it must be dismissed.

**Count 4.** This Count is not articulated as a separate claim for relief, but as a separate legal theory supporting Mr. Ward's assertion that his position at IOF was not employment-at-will. It is, therefore, another claim for breach of contract.

Count 4 alleges that the non-competition term of the Employment Agreement constitutes adequate independent consideration given by Mr. Ward that converts his at-will status to one that requires good cause for termination. As explained above, one of the three exceptions to Indiana's firmly-established employment-at-will presumption is when an employee gives adequate independent consideration for employment, consideration that an employee would not have given in exchange for at-will employment. *Wior v. Anchor Industries, Inc.*, 669 N.E.2d 172, 176-77 (Ind. 1996). Indiana precedent teaches that such consideration must be in addition to the employee's services, unique skills, and usual steps taken to place the employee in position to commence employment, such as leaving a former job and relocating to a new one. *Orr*, 689 N.E.2d at 718; *Wior*, 669 N.E.2d at 176. Count 4 alleges that Mr. Ward's promise in § 6.2 of the Employment Agreement to comply with the terms of the attached Schedule D restricting his

19

competition with IOF for a period of twenty-four months after termination supplies adequate independent consideration to support an exception to employment-at-will in this case because it is the equivalent of giving up a competing business.  Indiana decisions do suggest that giving up a competing business to enter employment with a competitor does supply adequate independent consideration to rebut the presumption of at-will employment.  *Wior*, 669 N.E.2d at 175.  *See Steele v. McDonald's Corp.*, 686 N.E.2d 137, 141 (Ind. Ct. App. 1997), *trans. denied*; *Ohio Table Pad Co. v. Hogan*, 424 N.E.2d 144, 146 (Ind. Ct. App. 1981).

However, Indiana jurisprudence rarely recognizes exceptions to the presumption of employment-at-will, *see Jarboe*, 644 N.E.2d at 121, and we have found no Indiana decisions holding that a non-competition covenant supplies adequate independent consideration to support such an exception.  There are decisions holding that continued or promised at-will employment is a sufficient exchange for a non-competition agreement.  *Orem*, 711 N.E.2d at 871-72; *Ackerman v. Kimball Intern., Inc.*, 634 N.E.2d 778,781 (Ind. Ct. App. 1994), *holding on this ground adopted*, 652 N.E.2d 507, 509 (Ind. 1995); *Hamblen*, 478 N.E.2d at 928.  However, Indiana law also recognizes the freedom of parties to contract, *Gomez v. Chua Medical Corp.*, 510 N.E.2d 191, 195 (Ind. Ct. App. 1987),[9] does not assess the adequacy or proportionality of bargained-for considerations, *Orem*, 711 N.E.2d at 871, and presumes that the written terms of a contract accurately record the parties' bargained-for exchanges, *Orem*, 711 N.E.2d at 871-72;

---

[9] "[W]e respect and believe in individual freedom to contract. That freedom, if it is to be real, must necessarily include the freedom to enter into enforceable contracts that are unwise or even foolish. As the court pointed out in *Raymundo*, in this state there is strong public interest in the freedom of individuals to contract. If an individual agrees to be bound by a covenant against competition under circumstances where he is terminated at will, we see no compelling reason to deny enforcement of his promise."  *Gomez*, 510 N.E.2d  at 195.

*Hamblen*, 478 N.E.2d at 928.

In the case at bar, the Employment Agreement unambiguously provides in § 8.1 that Mr. Ward's employment is at-will and there is no allegation or indication that Mr. Ward's non-competition promise in § 6.2 was bargained or exchanged for any additional written or oral job-security or tenure promise. That the RDS position has been designated as employment-at-will suffices, under Indiana law, as consideration and an acceptable exchange for Mr. Ward's promise not to compete post-termination. The best evidence of the content of the parties' agreements is, of course, the actual terms of the Employment Agreement. On the allegations of the Complaint and the evidence of the submitted documents, the Employment Agreement and incorporated attachments accurately and comprehensively record the parties' agreement for at-will employment. Count 4 thus fails to state a claim and shall also be dismissed.

**Counts 7 and 8.** These counts assert negligence claims against IOF, Mr. Rollandelli, and Mr. Barnett. In Count 7, Mr. Ward alleges that he suffered physical injuries while removing his personal belongings from his office at IOF on the day he was terminated by Mr. Rollandelli and Mr. Barnett. According to the complaint, both men refused Mr. Ward's request for a 24-hour period to remove his belongings, requiring him to do so immediately as they watched and failing to provide any assistance. Mr. Ward alleges that they had a duty to exercise reasonable care towards him and should have known of the risks to Mr. Ward's health from moving many heavy items on his own while utilizing an industrial-sized dolly. During the move, Mr. Ward suffered physical injuries requiring immediate treatment at an emergency room. Count 7 asserts gross negligence claims against all defendants and seeks compensatory damages.

Count 8 adds the allegations that Mr. Rollandelli and Mr. Barnett subjected Mr. Ward to ridicule when they laughed as they watched him being taken to an ambulance on a stretcher after being injured, Complaint, ¶ 69, claiming that their requirement that he immediately remove his belongings was "wilful and malicious." *Id.*, ¶ 73. The remainder of this Count details Mr. Ward's injuries: physical pain and discomfort on a regular basis, disability from engaging in sedentary work, severe restriction of his ability to enjoy or engage in athletic competition, and the fear that his health will not return to pre-accident capacity. *Id.*, ¶¶ 70-72. Count 8 asserts that all three defendants negligently inflicted emotional distress on Mr. Ward for which he seeks compensatory and punitive damages.

In Indiana, recovery under the Worker's Compensation Act, Ind. Stat. Ann. § 22-3-2-6, *et. seq.*, is the exclusive remedy for employees' personal injuries when they are accidental, arise out of employment, and incurred in the course of employment. *Id.*; *Price v. R & A Sales*, 773 N.E.2d 873, 875 (Ind. Ct. App. 2002), *trans. denied.* Although Mr. Ward alleges that his injuries resulted from Mr. Rollandelli's and Mr. Barnett's "willful and malicious ordering [of] Mr. Ward to immediately remove his belongs from IOF premises and to never return," Complaint, ¶ 73, he does not allege any facts or circumstances indicating that his injuries were anything other than accidental. While the refusal of his request for a 24-hour delay to remove his belongs might have been malicious (the Court assumes that it was "wilful"), no facts are alleged or suggested showing that Mr. Rollandelli or Mr. Barnett directly injured Mr. Ward or that they intended Mr. Ward to be injured.[10]  In fact, Counts 7 and 8 are specifically pled as assertions of negligent torts.

_____

[10] *Perry*, 637 N.E.2d at 1287: "[A]n injury is 'by accident' when it is intended neither by the victim-employee nor by the employer. Before an injury can be said to have been intended by an employer, two requirements must be met. First, the employer itself must have intended the

Under the Act, a qualifying personal injury includes physical injury, disability, and impairment. *Perry v. Stitzer Buick & GMC, Inc.*, 637 N.E.2d 1282, 1288 (Ind. 1994). Mr. Ward's alleged injuries of physical pain and discomfort, Complaint, ¶ 70, disability from engaging in sedentary work, *id.*, and a restricted ability to engage in athletic competition,[11] *id.*, ¶ 71, all fall under the definition of personal injuries under the Act. However, emotional or psychic injuries caused by employment-related accidents that do not result in any physical injury, disability, or impairment are not "personal injuries" under the Act and actions seeking recovery for such injuries are not barred. *Id.*, at 1288. Count 8 alleges that Mr. Ward's "enjoyment of and ability to engage in athletic competition has been severely restricted," Complaint, ¶ 71, and that he "possesses the reasonable fear that his physical health will never return to the capacity he enjoyed immediately prior to incurring physical injuries," *id.*, ¶ 72. Mr. Ward's alleged emotional injuries of restricted enjoyment of athletic competition and fear of not recovering his health are not barred by Indiana's Worker's Compensation Act. Therefore, Count 7 and ¶ 70 of Count 8 are dismissed. Paragraph 71 of Count 8 is dismissed to the extent that it asserts a claim for damages due to Mr. Ward's severely-restricted ability to engage in athletic competition.

---

injury. Inasmuch as the intentions of co-workers and third parties play no part in this consideration, many intentionally inflicted injuries must be deemed 'by accident' under the act. . . . Second, the employer-tortfeasor must act with the requisite level of intentionality."

[11] It is unknown whether the nature of Mr. Ward's restriction from engaging in athletic competition is separate and independent from his inability to engage in sedentary work — or, in fact, whether it is even a physical restriction. The inability to engage in sedentary work would be a 'disability' type of personal injury under the Act while the athletic restriction, if not impacting Mr. Ward's ability to work and assuming that it is a physical restriction, would qualify as an 'impairment' type of personal injury. *See Perry*, 637 N.E.2d at 1288 ("'Impairment' is a term of art for purposes of workers compensation that denotes an injured employee's loss of physical functions.").

23

**Count 9.**  This Count asserts intentional infliction of emotional distress claims against all three defendants, describing a series of events wherein Mr. Ward apparently feels he was wronged:

> In January 2002, Mr. Rollandelli "berated" Mr. Ward for approximately three hours in Mr. Rollandelli's hotel room at an IOF National Manager's Meeting for Mr. Ward's resistance to using training materials that Mr. Ward believed were plagiarized from a competing insurer in violation of copyright and trade-secret laws.
>
> On March 26, 2002, Mr. Rollandelli produced a memorandum to Mr. Ward placing him on probation, listing requirements to be met during the probation, and advising that failure to meet the requirements would result in termination.
>
> The next day, March 27, 2002, Mr. Rollandelli and Mr. Barnett "disciplined" Mr. Ward in a public hotel lobby and laughed at him.
>
> On the same day, Mr. Rollandelli and Mr. Barnett "forced" Mr. Ward to sign the probation memorandum, advising him that he would be terminated if he refused to sign.
>
> On the same day, Mr. Barnett advised Mr. Ward that IOF received an anonymous telephonic complaint regarding Mr. Ward.
>
> In April 2002, Mr. Barnett interviewed Mr. Ward's agents regarding the complaint.  The interviews disrupted Mr. Ward's business and undermined his authority with his agents.
>
> On April 9, 2002, Mr. Barnett advised Mr. Ward that "everything was fine" regarding his investigation of the complaint and that Mr. Ward did not have to worry about further reprimand regarding the complaint.
>
> On April 12, 2002, Mr. Rollandelli telephoned Mr. Ward to schedule a meeting on April 15 regarding the investigation.  Mr. Ward asked if he was going to be fired and Mr. Rollandelli responded, "Enough with the paranoia, no you're not."
>
> During the April 15, 2002 meeting of Messrs. Rollandelli, Barnett, and Ward:
>
>> Mr. Ward asked if he was being fired and Mr. Rollandelli denied it.
>>
>> Mr. Ward asserted that he had complied with his probation program "100%" and Mr. Rollandelli immediately agreed.

Mr. Ward was given a pre-printed check.

Mr. Rollandelli and Mr. Barnett brought up the telephonic complaint against Mr. Ward, did not give any details, did not afford Mr. Ward an opportunity to defend himself, and conceded that they did not ascertain the identity of the complainer or to whom the complaint was made.

Mr. Ward asked Mr. Barnett for a copy of the recording of the complaint and Mr. Barnett identified another individual who might have a copy.

Mr. Ward was informed that two or three agents reported that Mr. Ward told them that he had at least two more years of experience than Mr. Ward reported on his application.  Mr. Ward asked if there was any inaccuracy in his application and Mr. Barnett responded that he didn't know and he had not looked at Mr. Ward's application.

On April 16, 2002, the day after Mr. Ward's termination, Mr. Ward telephoned the individual identified by Mr. Barnett as possibly having a recording of the complaint call and the individual responded that he was unaware of the complaint and did not have a recording of it.

Mr. Ward's replacement as RDS stayed overnight in Indianapolis on April 15, 2002 and was introduced to Mr. Ward's agents on the next morning as his replacement.

IOF reimbursed Mr. Ward's replacement's relocation expenses, but refused to reimburse Mr. Ward's relocation expenses.

Complaint, ¶¶ 74-88.

The Indiana tort of intentional infliction of emotional distress "is committed when a person engages in extreme and outrageous conduct that intentionally or recklessly causes severe emotional distress to another.  Rigorous requirements must be met to prove the tort.  The conduct at issue must exceed all bounds usually tolerated by a decent society and must cause mental distress of a very serious kind.  In the appropriate case, the issue may be decided as a matter of law." *Dietz v. Finlay Fine Jewelry Corp.*, 754 N.E.2d 958, 970 (Ind. Ct. App. 2001) (citations omitted).  Ordinary workplace discipline and counseling does not qualify as the type of

outrageous conduct that the tort will remedy.  *Id.*

Summarizing Mr. Ward's litany of wrongs, he complains of the following conduct by Mr. Rollandelli and Mr. Barnett:  (1) "berating" him for three hours; (2) "disciplining" and laughing at him in a public hotel lobby; (3) lying to him about their plans to terminate him; and (4) accusing him of being paranoid.  The allegations regarding the pre-printed check and Mr. Ward's replacement being positioned to quickly take over Mr. Ward's position are understood as only evidence of Mr. Rollandelli's and Mr. Barnett's lies and Mr. Rollandelli's malicious intent when telling Mr. Ward that he was paranoid.  Placing Mr. Ward on probation, having him sign the probation memorandum under threat of immediate termination, conducting an investigation into an anonymous complaint, interviewing Mr. Ward's subordinates as part of that investigation, addressing the complaint during Mr. Ward's termination meeting, inquiring about the accuracy of Mr. Ward's application, the dialogue about the availability of a tape of the telephonic complaint, and paying Mr. Ward's replacement's relocation expenses do not begin to approach the type of outrageous conduct required to establish the tort of intentional infliction of emotional distress.  Neither do deceptions by superiors about termination intentions nor a single, casual, and private comment dismissing an employee's fears of termination as "paranoia." *Dietz*, *supra*; *Conwell v. Beatty*, 667 N.E.2d 768 (Ind. Ct. App. 1996); *Gable v. Curtis*, 673 N.E.2d 805 (Ind. Ct. App. 1996); *Imhoff v. K-Mart Stores of Indiana, Inc.*, 149 F.Supp. 2d 559, 572-73 (N.D. Ind. 2001); *King v. Wiseway Super Center, Inc.*, 954 F.Supp. 1289, 1295 (N.D. Ind. 1997).

Drawing all inferences in favor of the non-moving party, and recognizing the limits of notice pleading, the Court cannot conclude on the present motion that Mr. Ward's allegations

26

regarding Mr. Rollandelli "berating" Mr. Ward for three hours or his allegations regarding Mr. Rollandelli and Mr. Barnett disciplining and laughing at Mr. Ward in a public hotel lobby fail to state claims for intentional infliction of emotional distress.  Depending on the substance of these incidents — the complete nature and circumstances of which were not pled — they might rise to the level of outrageousness encompassed by the asserted cause of action although, based on Indiana and federal precedent, it is unlikely.

Count 9 is dismissed except for the allegations and claims asserted in ¶¶ 74 and 89, and all but the last sentence of ¶ 77.

**Count 11.**  This Count seeks a permanent injunction against IOF prohibiting direct contact and communication with Mr. Ward.  Mr. Ward alleges receipt of three items of mail from IOF since his termination which he interprets as harassing and humiliating.  First, a February 2003 mass-mailed advertisement for financial products that bore Mr. Ward's pre-printed signature.  Mr. Ward alleges that the mailing "exposed [him] to unwarranted speculation regarding his employment status" and misappropriated his likeness and character.  Complaint, ¶¶ 90-94.  Second, in November 2003, Mr. Ward received a "direct mailing" from IOF recruiting him to be an agent, which would have been a demotion from his previous position.  *Id.*, ¶¶ 98 and 101.  Third, Mr. Ward received another advertisement in February 2004.  Because this Count does not allege the type of substantial or irreparable injury without legal remedy that warrants injunctive relief, or the likelihood of repetition with injury, it is dismissed.

**Count 14.**  This Count asserts an unjust-enrichment claim against IOF.  Mr. Ward asserts that IOF has been unjustly enriched because it "failed to perform its obligations pursuant to Mr.

Ward's Employment Agreement," Complaint, ¶ 109, and because of its "refusal to adhere to its obligations under the Employment Agreement," *id.*, ¶ 111. Specifically, Mr. Ward alleges that IOF has been unjustly enriched because it "willfully and maliciously denied reimbursement to Mr. Ward for his contractual right to relocation expenses." *Id.*, ¶ 110. Claims based on theories of constructive contract, *quantum meruit*, and unjust enrichment are not available when an express, written contract exists covering the subject matter of the claim. *DiMizio v. Romo*, 756 N.E.2d 1018, 1025 (Ind. Ct. App. 2001); *King v. Terry*, 805 N.E.2d 397 (Ind. Ct. App. 2004); *Engelbrecht v. Property Developers, Inc.*, 296 N.E.2d 798 (Ind. App. 1973); *Beanstalk Group, Inc. v. A M General Corp.*, 143 F.Supp.2d 1020, 1031 (N.D. Ind. 2001). As explained above in the discussion relating to Count 1, §§ 2.5 and 2.6 of the Employment Agreement address reimbursement of Mr. Ward's relocation expenses and the Employment Agreement contains an integration clause nullifying any previous oral agreements between the parties. In addition, Count 16 asserts a breach-of-contract action against IOF based on §§ 2.5 and 2.6 for IOF's failure to reimburse Mr. Ward's relocation expenses. Because there is no room for an unjust-enrichment claim relating to non-payment of Mr. Ward's relocation expenses, this Count also fails to state a claim and must be dismissed.

**Count 15.** Finally, this Count asserts that Mr. Rollandelli and Mr. Barnett intentionally interfered with Mr. Ward's contractual relationship with IOF. The only interference identified is with his right to receive reimbursement of his relocation expenses, Contract, ¶ 112, but the incorporation in this Count of the allegations of all Counts against Mr. Rollandelli and Mr. Barnett indicates that Mr. Ward alleges that all of Mr. Rollandelli's and Mr. Barnett's actions constituted intentional interference. In Indiana, an action for intentional interference lies only

against third parties, *Martin v. Platt*, 386 N.E.2d 1026, 1027 (Ind. Ct. App. 1979); liability will not lie against an agent of a contracting party acting within the scope of his authority and duties , *Kiyose v. Trustees of Indiana University*, 333 N.E.2d 886 (Ind. App. 1975).  *Leslie v. St. Vincent New Hope, Inc.*, 873 F.Supp. 1250 (S.D. Ind. 1995).  Although Mr. Ward asserts generally that Mr. Rollandelli and Mr. Barnett "were acting outside the scope of employment at all times of interference," the only basis for the assertion is Mr. Ward's circular conclusion that "this interference was averse to IOF's contractual obligations and tortious responsibilities."  Complaint, ¶ 113.  Whether Mr. Rollandelli's and Mr. Barnett's actions were within their scope of employment is not determined by whether their actions are ultimately found to be tortious or in breach of the Employment Agreement, and the allegations of Mr. Rollandelli's and Mr. Barnett's conduct in the Complaint do not sufficiently indicate that their actions were beyond their authorities.  The Count is therefore insufficient to state a claim for intentional interference and fails to give adequate notice to the defendants of the nature of Mr. Ward's claim against them.  The Count shall therefore be dismissed.

## Conclusion

The plaintiff's Second Motion to Exclude (doc. no. 82) is denied.  The defendants' Motion to Dismiss (doc. no. 65) is granted in part and denied in part.  Counts 1, 2, 4, 7, 11, 14, and 15 of the Fourth Amended Complaint are dismissed in their entireties.  Counts 8 and 9 are dismissed in part, as set forth above.

Done this   7th        day of March, 2006.

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

29

Distribution:

Paul H. Sinclair
ICE MILLER
paul.sinclair@icemiller.com

Julie M. Conrad
ICE MILLER
conrad@icemiller.com

Therese V. Byerly
theresebyerly02@aol.com